# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

IN RE                                    )
                                         )
KM ALLIED OF NAMPA, LLC,                 )        Case No. 10-03056-TLM
                                         )
                    Debtor.              )        Chapter 11
_____          )

### MEMORANDUM OF DECISION
_____

## INTRODUCTION

Before the Court in this chapter 11 case are matters related to relief from

the automatic stay of § 362(a) and approval of a proposed, amended disclosure

statement under the standards of § 1125(a).[1]  A final evidentiary hearing under

§ 362(e) on the stay relief motion, and a hearing on objections to the amended

disclosure statement, were held on March 14, 2011.  Both matters were then taken

under advisement.  However, before reaching those issues, the Court must first

address a fundamental dispute between the chapter 11 debtor in possession, KM

Allied of Nampa, LLC ("Debtor"), and secured creditor Zions First National

Bank, N.A. ("Zions Bank") as to whether Debtor may properly attempt to

_____

[1]  Unless otherwise indicated, all chapter, section and other statutory references are to the
Bankruptcy Code, Title 11, U.S.C. §§ 101-1532 (the "Code"), and all rule references are to the
Federal Rules of Bankruptcy Procedure 1001-9037.

MEMORANDUM OF DECISION - 1

restructure under chapter 11 the obligation to Zions Bank.[2]

**FACTS**[3]

Debtor is an Idaho limited liability company formed on June 26, 2008.  KM

Leasing LLC ("KML") was, at that time, its sole member, and Debtor

characterizes itself as then being a wholly-owned subsidiary of KML.

Debtor was formed to develop and construct improvements on certain real

property located at 3015 E. Comstock, Nampa, Idaho (the "Property"), such real

property ultimately to be leased to Allied Waste of North America, LLC ("Allied

Waste").

On July 14, 2008, Kowallis & Mackey Development, LLC ("KMD") and

Zions Bank entered into a construction loan agreement, promissory note, and

commercial security agreement.[4]  Under those documents, Zions Bank loaned

---

[2]  This Decision constitutes the Court's findings of fact and conclusions of law on all
pending matters.  Fed. R. Bankr. P. 7052, 9014.

[3]  Only one witness, John W. Mackey, testified at the March 14, 2011 hearing.  No
documentary evidence was introduced.  No stipulations as to facts were proffered.  Despite the
relatively bare evidentiary record, the parties' arguments suggest a lack of dispute as to many of
the underlying facts (though clearly not their legal import).  To a significant degree, the Court
takes the facts from Debtor's schedules and statements which were sworn to under penalty of
perjury, *see* Fed. R. Evid. 801(d)(2), and the proof of claim filed by Zions Bank.  The Court has
also relied on the proposed amended disclosure statement, Doc. No. 27, and the briefing of the
parties, in areas where no dispute seems to exist.  Given the manner in which the litigation was
approached by the parties, the Court reserves the right to revisit and revise its factual findings
based on future hearings and evidence.

[4]  *See* Claim No. 1-1, filed Jan. 18, 2011, by Zions Bank and the documents attached
thereto.  Debtor has not objected to the proof of claim.  *See* Fed. R. Bankr. P. 3001(f) (filed proof
of claim constitutes *prima facie* evidence of the validity and amount of the claim).

MEMORANDUM OF DECISION - 2

$1,750,000 to KMD for "Construction Financing for Land and Facilities for Allied

Waste located in Nampa, Idaho."  KMD is the obligor on the promissory note and

the borrower on the construction loan agreement.[5]  Zions Bank had financed other

KMD projects and developments.  John W. Mackey, manager of Debtor, testified

that generally a project-specific limited liability company would be formed to hold

title to the property and that such an entity would later be made a borrower or a

guarantor of the KMD-Zions Bank construction or development loans on that

particular project.  That did not occur here; Debtor is not an obligor on, nor is it a

guarantor of, the promissory note.[6]

On July 14, 2008, contemporaneously with the execution of the note and

construction agreement by KMD, Debtor executed a deed of trust and fixture

filing on the Property to the benefit of Zions Bank.  An assignment of rents to

Zions Bank was also executed by Debtor the same day.[7]

Debtor asserts that, after construction was concluded and Allied Waste had

taken possession and begun paying rent, Zions Bank refused to enter into

---

[5]  The note and related documents executed by KMD are signed by Doug L. Kowallis and John W. Mackey as members of KMD.

[6]  Debtor acknowledges in its amended disclosure statement that John Mackey and his wife, Douglas Kowallis and his wife, and certain companies "affiliated" with KMD (Kowallis & Mackey, LLC; Kowallis & Mackey II, LLC; Kowallis & Mackey IV, LLC; and Powerhouse, LLC) guaranteed the KMD obligations to Zions Bank.

[7]  That Debtor was the title owner and capable of granting the deed of trust is not disputed.  Debtor asserts it is the fee simple owner of the Property in its schedules.  *See* Doc. No. 1 at sched. A.

MEMORANDUM OF DECISION - 3

permanent financing.[8]  Zions Bank issued notice of default in the spring of 2010

and a deed of trust sale was set for September 20, 2010.

Debtor filed its chapter 11 petition for relief on September 17, 2010,

staying the deed of trust sale.[9]  Immediately before filing Debtor's chapter 11

petition on September 17, 2010, KML merged into Debtor.[10]  Following that

merger, and by an accompanying resolution, the 100% ownership of Debtor by

KML was converted to a situation where Littlewood Landing, LLC had 100%

"capital ownership" of Debtor and an 82.5% "interest in profits and losses," and

Kowallis & Mackey Development II, LLC had a 10% interest in its profits and

losses and an individual, Scott Steed, had a 7.5% interest in its profit and losses.[11]

---

[8]  The July 14, 2008 promissory note called for a single payment of principal and accrued interest on May 1, 2009.  There were several "change in terms agreements" entered into by KMD and Zions Bank extending the maturity date, ultimately to January 1, 2010.  *See* Claim No. 1-1 at 8-21.

[9]  The petition makes clear that this is a "single asset real estate" case as defined in § 101(51B).  Doc. No. 1 at 1.

[10]  Attached to the amended disclosure statement is a "statement of merger" bearing a 2:22 p.m. September 17, 2010, filing stamp from the Idaho Secretary of State.  Doc. No. 27 at 16-17.  The petition was filed at 4:06 p.m. on September 17, 2010.  Doc. No. 1 (at NEF).

[11]  *See* Doc. No. 27 at 20-21; *see also* Doc. No. 1 at 24-25 (statement of financial affairs ("SOFA"), response to question 21).  John Mackey testified that he has a small interest in Debtor through his ownership in "Kowallis & Mackey" (evidently meaning Kowallis & Mackey Development II, LLC), and that his brother owns 95% of Littlewood Landing, LLC.  There is an unexplained inconsistency, however, in that the discussion of equity holders in the disclosure statement and the resolution appended thereto identify "Littlewood Landing, LLC" as the equity holder, *see* Doc. No. 27 at 12, 18, while the SOFA indicates "Littlewood Partners, LLC" is the equity holder, *see* Doc. No. 1 at 25.  As discussed *infra*, Littlewood Partners, LLC is also listed as an unsecured creditor.  Doc. No. 1 at 16.

MEMORANDUM OF DECISION - 4

Debtor filed a proposed chapter 11 plan and disclosure statement on the same day as the petition for relief.  Doc. Nos. 6, 7.  An amended chapter 11 plan, Doc. No. 26 ("Plan") and an amended disclosure statement, Doc. No. 27, were filed on January 14, 2011.  On February 2, Zions Bank filed its motion for relief from stay, Doc. No. 29 ("Stay Motion").

## DISCUSSION AND DISPOSITION

### A.    The threshold issues

#### 1.    Existence of a "claim"

The issue that underlies all the others debated by the parties is whether Debtor may properly attempt to restructure under chapter 11 the obligation to Zions Bank when Debtor is not a party to the note or the construction agreement. Zions Bank argues Debtor "lacks contractual privity" with Zions Bank in this transaction and therefore cannot modify or restructure the "loan."  *See*, *e.g.*, Doc. No. 38 at 6-9 (brief).  However, the plain language of the Code and settled case law, including Supreme Court decisions, contradict the position taken by Zions Bank.

A plan under chapter 11 may classify and propose treatment of "claims" against a debtor.  *See*, *e.g.*, § 1122 (classification of claims or interests), § 1123 (contents of plan), § 1124 (impairment of claims or interests).  For purposes of the Code, "claim" is specifically defined:

MEMORANDUM OF DECISION - 5

The term "claim" means –

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Section 101(5).  Similarly:

The term "creditor" means –

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or

(C) entity that has a community claim.

Section 101(10).  Finally, a "debt" means "liability on a claim."  *See* § 101(12).

The Supreme Court in *Pennsylvania Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552 (1990), explained that Congress intended the language of § 101(5) to adopt the broadest available definition of "claim."  *Id.* at 558.  It concluded that the statutory language "right to payment" means "nothing more nor less than an enforceable obligation."  *Id.* at 559.

Even more to the point presented in the instant case, the Supreme Court considered in *Johnson v. Home State Bank*, 501 U.S. 78 (1991), the question of "whether a mortgage lien that secures an obligation for which a debtor's personal liability has been discharged in a Chapter 7 liquidation is a 'claim' subject to

MEMORANDUM OF DECISION - 6

inclusion in an approved Chapter 13 reorganization plan." *Id.* at 82.  The Supreme

Court unambiguously held it was.

*Johnson* first noted that the discharge in a chapter 7 case "extinguishes only

'the personal liability of the debtor.'" *Id.* (quoting § 524(a)(1)).  The "creditor's

right to foreclose on the mortgage survives or passes through the bankruptcy." *Id.*

(citing § 522(c)(2) and *Owen v. Owen*, 500 U.S. 305, 308-09 (1991)).  Then, after

acknowledging the statutory definition of "claim" and the broad and expansive

interpretation of that definition under *Davenport*, the Supreme Court held:

> Applying the teachings of *Davenport*, we have no trouble
> concluding that a mortgage interest that survives the discharge of a
> debtor's personal liability is a "claim" within the terms of § 101(5).
> Even after the debtor's personal obligations have been extinguished,
> the mortgage holder still retains a "right to payment" in the form of its
> right to the proceeds from the sale of the debtor's property.
> Alternatively, the creditor's surviving right to foreclose on the
> mortgage can be viewed as a "right to an equitable remedy" for the
> debtor's default on the underlying obligation.  Either way, there can be
> no doubt that the surviving mortgage interest corresponds to an
> "enforceable obligation" of the debtor.

501 U.S. at 84.  *Johnson* also found that this interpretation was consistent with

§ 502(b)(1), which provides that the court, upon objection to a claim, "shall allow

such claim in such amount, except to the extent that . . . such claim is

unenforceable against the debtor *and property of the debtor*[.]" (Emphasis added).

> In other words, the court must allow the claim if it is enforceable
> against *either* the debtor *or* his property.    Thus, § 502(b)(1)
> contemplates circumstances in which a "claim," like the mortgage lien
> that passes through a Chapter 7 proceeding, may consist of nothing

MEMORANDUM OF DECISION - 7

more than an obligation enforceable against the debtor's property. Similarly, § 102(2) establishes, as a "[r]ul[e] of construction," that the phrase "'claim against the debtor' includes claim against property of the debtor." *A fair reading of § 102(2) is that a creditor who, like the Bank in this case, has a claim enforceable only against the debtor's property nonetheless has a "claim against the debtor" for purposes of the Code.*

501 U.S. 85 (emphasis added).[12]

Using alternative terminology, Zions Bank has here a nonrecourse claim:

A nonrecourse creditor is one who can "look only to its collateral for satisfaction of its debt and does not have any right to seek payment of any deficiency from a debtor's other assets."  A recourse creditor "has the right to seek payment of a deficiency in the value of its collateral from the debtor's other assets."

*First Fed. Bank of Cal. v. Weinstein (In re Weinstein)*, 227 B.R. 284, 292 (9th Cir. BAP 1998) (quoting *680 Fifth Ave. Assocs. v. Mut. Benefit Life Ins. Co. (In re 680 Fifth Ave. Assocs.)*, 156 B.R. 726, 732-33 (Bankr. S.D.N.Y. 1993)).  *Johnson*, in support of its holding, noted that the legislative history surrounding § 102(2) contemplated inclusion of "nonrecourse loan agreements where the creditor's only rights are against property of the debtor, and not against the debtor personally." 501 U.S. at 86 (quoting H.R. Rep. No. 95-595, at 315 (1977)).  *Johnson* found that the mortgage interest that passed through chapter 7 and was thereafter only

---

[12] Section 102 addresses "rules of construction" and provides in subsection (2):

In this title –
    ...
        (2) "claim against the debtor" includes claim against property of the debtor[.]

MEMORANDUM OF DECISION - 8

enforceable against the debtor's property "has the same properties as a

nonrecourse loan" even though it was true "that the debtor and creditor in such a

case did not conceive of their credit agreement as a nonrecourse loan when they

entered into it." 501 U.S. at 86.

This Court perceives no material distinction between the claim in *Johnson*,

which was assertable only against a debtor's property due to that debtor's prior

discharge of personal liability, and the claim here, which is assertable against

Debtor's Property but where no right of action exists by Zions Bank against

Debtor personally. Both reflect situations where the creditor has a "claim" against

the debtor's property but not against the debtor personally. As *Johnson* states:

> [I]nsofar as Congress did not expressly limit § 102(2) to nonrecourse
> loans but rather chose general language broad enough to encompass
> such obligations, *we understand Congress' intent to be that § 102(2)
> extend to all interests having the relevant attributes of nonrecourse
> obligations regardless of how these interests come into existence.*

*Id.* at 86-87 (emphasis added).[13]

The Court therefore finds and concludes that Zions Bank has a "claim"

_____

[13]   Unlike many situations (and even unlike the situation in *Johnson*), the obligor on the
nonrecourse secured claim here (Debtor) is not the same party as the obligor on the related note
(KMD). Zions Bank repeatedly stresses this point. The emphasized language from *Johnson*
supports the conclusion that this is a distinction without a difference. *Accord, In re Foxcroft
Square Co.*, 184 B.R. 671, 676-77 (E.D. Pa. 1995) (rejecting a creditor's attempt to distinguish
*Johnson* because there was no debtor-creditor relationship between the chapter 11 debtor and the
creditor); *see also In re 114 Tenth Ave. Assoc., Inc.*, 427 B.R. 283, 292 (Bankr. S.D.N.Y. 2010),
*aff'd* 441 B.R. 416, 423-24 (S.D.N.Y. 2010) (determining the absence of contractual privity
between lienholder and bankruptcy debtor immaterial to § 1111(b) treatment).

MEMORANDUM OF DECISION - 9

against Debtor.  Debtor may include such claim among those it seeks to restructure and treat in accord with relevant provisions of the Code in its chapter 11 reorganization.

### 2.    Treatment of nonrecourse claims in chapter 11

This is also an opportune time to note the nature of the claim.  The Ninth Circuit Bankruptcy Appellate Panel ("BAP") explained how various provisions of the Code, including §§ 506, 1111 and 1129, relate to one another.  *See Weinstein*, 227 B.R. at 291-98.  In general, § 506(a) bifurcates the claim of an undersecured creditor into two claims, a secured claim equal to the value of the collateral and an unsecured claim equal to the remainder of the obligation owing the creditor as of the petition date.  *Id.* at 291-92 (citing *U.S. v. Ron Pair Enter., Inc.*, 489 U.S. 235, 239 & n.3 (1989)).  With exceptions not pertinent here, § 506(d) voids the lien as to the unsecured claim, in effect reducing the lien to the present value of the collateral.  *Id.* at 292 (citing *Dever v. Internal Revenue Service (In re Dever)*, 164 B.R. 132, 145 (Bankr. C.D. Cal. 1994)).  Then:

> With respect to the unsecured portion of the undersecured creditor's claim, the treatment of that claim in bankruptcy would depend on whether the creditor did or did not have recourse.  A nonrecourse creditor is one who can "look only to its collateral for satisfaction of its debt and does not have any right to seek payment of any deficiency from a debtor's other assets."  *680 Fifth Ave. Assocs.*, 156 B.R. at 732.  A recourse creditor "has the right to seek payment of a deficiency in the value of its collateral from the debtor's other assets."  *Id.* at 733.  Because § 502(b)(1) disallows any claim to the

MEMORANDUM OF DECISION - 10

extent that it is unenforceable against the debtor or the debtor's property under any agreement or under applicable nonbankruptcy law, the undersecured creditor with a nonrecourse unsecured claim would not be entitled to a distribution in bankruptcy. *In re Bloomingdale Partners*, 155 B.R. 961, 969 (Bankr. N.D. Ill. 1993) (citations omitted).

However, with exceptions not relevant here, § 1111(b)(1)(A) provides a very important benefit to the undersecured creditor holding a nonrecourse claim; it provides that for purposes of the Chapter 11 process, all secured debt shall be allowed or disallowed under § 502 as if it had recourse. *See* § 1111(b)(1)(A); *Bloomingdale Partners*, 155 B.R. at 969. This allows an undersecured creditor holding a nonrecourse claim to receive distribution on both the secured and unsecured portion of its claim.

227 B.R. at 292.[14]

Under the Code and case law, Zions Bank has a secured claim that Debtor may address in its plan. While it is, under the facts, a nonrecourse claim, Zions Bank has both a secured and an unsecured claim (*i.e.*, an unsecured "recourse" claim) due to operation of § 1111(b)(1)(A). Because no attempt has been made, as yet, to value the security for the claim, *see* Fed. R. Bankr. P. 3012, no finding is made as to the magnitude of either the secured or unsecured claims for purposes of plan treatment.[15]

---

[14] The "exceptions" to operation of § 1111(b)(1)(A)'s grant of a recourse unsecured claim are, first, when the class by a specified majority elects treatment under § 1111(b)(2) or, second, when the property subject to the nonrecourse claim is sold under § 363 or is proposed to be sold under the plan. Debtor's plan here does not propose a sale of the Property and no § 363 sale is suggested. Nor has Zions Bank elected treatment under § 1111(b)(2). The exceptions do not apply.

[15] The Court briefly addresses the question of value of the Property, below, in connection with stay relief. However, it is solely in connection with stay relief. Even § 506(a)(1)
(continued...)

MEMORANDUM OF DECISION - 11

### B.      Stay relief

Zions Bank contends relief from the automatic stay of § 362(a) is proper under § 362(d)(1), (2) and/or (3).  Stay Motion at 4-5, ¶¶ 12-14.[16]

#### 1.      Stay relief under § 362(d)(1)

Most of the contentions of Zions Bank as to "cause" for stay relief relate to the idea that Debtor is prohibited from including the Zions Bank claim in the chapter 11 case at all.  It also argues that, because note-obligor KMD is and has been in default under the promissory note, and because there is an alleged lack of adequate protection, there is good and compelling "cause" for relief from stay to allow Zions Bank to pursue its rights in the Property outside bankruptcy.

However, the Court has concluded above that Debtor may properly seek to address the "claim" of Zions Bank secured by the Property in this case.  That negates much of the argument advanced.  The Court also notes Debtor specifically represented that "adequate protection" payments would commence in March, 2011.

---

[15] (...continued)
notes that "value [is] determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."  The "plan treatment" is not yet properly before the Court.

[16]   While most of the Stay Motion focuses on § 362(d)(3), the other two grounds are also expressly alleged.

MEMORANDUM OF DECISION - 12

### 2.    Stay relief under § 362(d)(2)

Relief may be proper under § 362(d)(2) if (A) there is no equity in the
Property and (B) the Property is not necessary for an effective reorganization.
Under § 362(g)(1), Zions Bank has the burden of proof as to Debtor's equity.
Though no evidence of value was presented, Zions Bank met this threshold by
noting that Debtor's schedules, executed under penalty of perjury, asserted a value
of $2,020,500.  This is a sufficient admission of value for purposes of the Stay
Motion.  *See* Fed. R. Evid. 801(d)(2); *In re Roots Rents, Inc.*, 420 B.R. 28, 40
(Bankr. D. Idaho 2009) (citing *In re Bohrer*, 266 B.R. 200, 201 (Bankr. N.D. Cal.
2001)).  Zions Bank's proof of claim asserts a debt secured by the Property of
$2,024,420.20.  *See* Claim No 1-1.  There is no "equity" under § 362(d)(2)(A).[17]

However, relief under § 362(d)(2) requires a finding not only of lack of
equity but also, under § 362(d)(2)(B), that the property is not necessary for an
effective reorganization.  This requires an evaluation of whether Debtor has
proven there is "a reasonable possibility of a successful reorganization within a
reasonable time."  *Jordan*, 392 B.R. at 450 (quoting *United Sav. Ass'n of Texas v.
Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375-76 (1988)).  Inasmuch
as this test is so similar to that of § 362(d)(3)(A), and since § 362(d)(3) has special

---

[17]    For stay relief purposes, "equity" exists if the value of the property exceeds all claims
secured by that property, whether those claims belong to the moving creditor or others.  *In re
Jordan*, 392 B.R. 428, 447 (Bankr. D. Idaho 2008) (citing *Pistole v. Mellor (In re Mellor)*, 734
F.2d 1396, 1400 n.2 (9th Cir. 1984)).

MEMORANDUM OF DECISION - 13

application to a single asset real estate case such as this, the Court will discuss it

further below.

### 3.    Stay relief in the single asset real estate case

Under the pertinent portions of § 362(d)(3), the Court must grant stay relief

> (3) with respect to a stay of an act against single asset real estate . . . by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief . . .
>
>   (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable period of time; or
>
>   (B) the debtor has commenced monthly payments that –
>
>       (i) may . . . be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property . . . and
>
>       (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate[.]

Section 362(d)(3).

Debtor had not, as of the hearing (and certainly not within the first 90 days

of the case), commenced making payments to Zions Bank. Therefore, the

alternative defense to stay relief found in § 362(d)(3)(B) is not applicable, and the

inquiry must turn to § 362(d)(3)(A). According to one treatise:

> The purpose of section 362(d)(3) is to address perceived abuses in single asset real estate cases, in which debtors have attempted to delay mortgage foreclosures even when there is little chance that they

MEMORANDUM OF DECISION - 14

can reorganize successfully.  Section 362(d)(3) attempts to shorten such cases by requiring that the court grant relief from the stay if a reasonable plan is not filed promptly or payments are not commenced.

3 Collier on Bankruptcy ¶ 362.07[5][b] at 362-122 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010) (hereafter "Collier").

The goal of accelerated consideration of a chapter 11 plan is met in the instant case.  Debtor filed a plan on September 17, 2010, when it filed its petition for relief.  *See* Doc. No. 6.  The amended plan, Doc. No. 26, was filed on January 14, 2011, following a December 13, 2010, hearing on approval of the initial disclosure statement.  There has been minimal delay in framing the issues or proceeding with the chapter 11 case.  It is clear Debtor met the 90 day window for the filing of a plan required by § 362(d)(3)(A).

The next question is whether there is a reasonable possibility of a plan being confirmed within a reasonable period of time.  Two factors persuade the Court that Debtor met its burden[18] on this element.  The first is one of timeliness.  The Court today addresses approval of the amended disclosure statement.  Once a revised disclosure statement is approved, the plan confirmation process quickly follows.  The Court does not foresee an unreasonable period of time passing before the question of whether Debtor can successfully reorganize is resolved one way or the other.

---

[18]  *See* § 362(g)(2).

MEMORANDUM OF DECISION - 15

The second factor relates to Debtor's ability to "successfully" reorganize. Unlike the example noted by Collier as motivating the § 362(d)(3) amendment – a debtor without income hopelessly delaying foreclosure – Debtor here has a tenant (Allied Waste) on the Property, under a triple-net lease with several years of its term remaining, current on payment of rent.[19]  There are, of course, issues remaining as to whether Debtor will be able to confirm a plan that restructures the obligation to Zions Bank and under what terms.  At present, however, there is enough possibility of a successful reorganization within a reasonable period of time to prevent termination of the stay under § 362(d)(3)(B).  And, given the similarity of language and policy, relief is also found inappropriate at this time under § 362(d)(2)(B).

The Stay Motion will be denied.

### C.    Amended disclosure statement

The final issue is that of approval under § 1125(a)(1) of the amended disclosure statement.  That Code provision requires Debtor provide "adequate information."[20]  "The determination of what is adequate information is subjective

---

[19]    John Mackey testified that there are about 8 years left on the original 10 year lease term, and there are options for two potential 5-year extensions of the lease term provided for in the lease.  He testified that the rent under the lease is approximately $18,000 per month, with a yearly CPI adjustment, and currently Debtor receives about $220,000 per year, with Allied Waste also paying taxes, utilities, insurance and common area maintenance charges.

[20]    In pertinent part, § 1125(a)(1) provides:

(a) in this section –

(continued...)

MEMORANDUM OF DECISION - 16

and made on a case by case basis [and] is largely within the discretion of the

bankruptcy court." *Computer Task Grp., Inc. v. Brotby (In re Brotby)*, 303 B.R.

177, 193 (9th Cir. BAP 2003).  Relevant issues or factors might include (1) a

description of debtor's assets and their value; (2) the scheduled claims; (3) the

estimated return to creditors under chapter 7; (4) the collectibility of accounts or

other income; (5) the actual or projected realizable value from recovery of

preferential or other avoidable transfers; (6) litigation likely to arise in a non-

bankruptcy context; (7) tax attributes of the debtor; and (8) debtor's relationships

with affiliates.  *See In re Pacific Shores Dev., Inc.*, 2011 WL 778205, at *4

(Bankr. S.D. Cal. Feb. 25, 2011).  *See generally* 7 Collier ¶ 1125.02[1] (noting

general standard and situational flexibility), and ¶ 1125.02[2] (identifying 19

common factors under case law).

    While "adequate information" is a Cartesian concept, permitting the

amount and detail of information to be tailored to fit the particular situation, "there

---

[20] (...continued)
    (1) "adequate information" means information of a kind, and in sufficient
detail, as far as is reasonably practicable in light of the nature and history of the
debtor and the condition of the debtor's books and records, including a discussion
of the potential material Federal tax consequences of the plan to the debtor, any
successor to the debtor, and a hypothetical investor typical of the holders of claims
or interests in the case, that would enable such a hypothetical investor of the relevant
class to make an informed judgment about the plan, but adequate information need
not include such information about any other possible or proposed plan and in
determining whether a disclosure statement provides adequate information, the court
shall consider the complexity of the case, the benefit of additional information to
creditors and other parties in interest, and the cost of providing additional
information[.]

MEMORANDUM OF DECISION - 17

is an irreducible minimum.  An informed judgment cannot be made without information about the plan and how the provisions of the plan will be put into effect." *Official Comm. of Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715, 718 (Bankr. E.D. Cal. 1992).

In the present case, the Court finds that the amended disclosure statement must be further amended in order to satisfy § 1125(a)(1).  Amendments will be required in the following areas.

### 1.    Nature of legal arguments and contentions

As a general observation, the amended disclosure statement contains extensive argument that should be placed in a separate brief at such time as legal disputes (such as confirmation) are properly before the Court.  Utilizing a disclosure statement as a legal brief is improper.

For example, while it is appropriate for Debtor to disclose a proposed interest rate for the treatment of the Zions Bank claim, and even to *briefly* explain the authority on which such a rate is proposed and believed to be adequate, the discussion (*see* Doc. No. 27 at 9-11) goes on far too long, in an unduly adversarial tone, and with at times inappropriately derisive language.  There will be a time and opportunity for Debtor to marshal its legal authorities and evidence, and litigate the issue of an appropriate interest rate.  A disclosure statement is not the appropriate forum for a discussion of this length or tone.

MEMORANDUM OF DECISION - 18

Most objectionable, in regard to the tenor of the language used, are the several paragraphs where Debtor threatens legal action for sanctions and other relief should Zions Bank "fabricate" a post-confirmation event of default. *Id.* at 11-12. This sort of disparaging rhetoric has little if any place in briefing, and no place at all in a disclosure statement.

When Debtor further amends its disclosure statement, it shall substantially reduce the amount of such argument, and it shall moderate the tone of what legitimately must be discussed.

### 2. Administrative expenses

Debtor's  amended disclosure statement discloses a general procedure for approval and payment of compensation to professionals and notes, more specifically, that "Debtor paid $7,961 as attorney fees before the filing. If the attorney fees exceed that amount, Counsel will seek approval of the additional fees." Doc. No. 27 at 8. However, Debtor has not obtained approval of its application for employment of counsel, Doc. No. 4, and the U.S. Trustee has an outstanding objection to the same, Doc. No. 14. To date, the approval of employment or the suggested approach to compensation has not been brought before the Court. The Court cannot approve a disclosure statement that suggests a payment structure for Counsel has been established when there is an outstanding objection and no resolution of the same. The amended disclosure statement must

MEMORANDUM OF DECISION - 19

be further amended to reflect the unresolved nature of this issue.

### 3. Amounts and treatment of claims

The January 14, 2011 amended disclosure statement "estimates" Zions Bank's claim at $2,017,591 which is a figure consistent with Debtor's schedule D listing for Zions Bank. *See* Doc. No. 1 at 14.[21] It asserts the value of the collateral is $2,020,500 or roughly $2,900 over Debtor's estimate of the Zions Bank claim amount. Debtor further discloses its proposed treatment of the secured claim (*i.e.*, payment of an estimated claim of $2,017,591 at 3.5% interest over 15 years, with principal and interest payments of $14,423.41, beginning on the earlier of a confirmation order or entry of a "stipulated adequate protection order"). Doc. No. 27 at 9. Although the amended disclosure statement notifies creditors of a dispute between Zions Bank and Debtor over interest rate, primarily through significant legal argument advocating the adequacy of Debtors' proposed rate, it does not notify creditors how the dispute over rate may affect feasability of Debtor's plan.[22]

---

[21]  Debtor did not specify the amount of any other creditor's claim. Instead, the amended disclosure statement indicates creditors may file proofs of claim, but that Debtor will "assume" the amounts of the claims are as reflected in its schedules. Given the limited number of creditors, it would have been far better to simply specify the scheduled claim amounts with a brief explanation of the operation of § 1111(a).

[22]  There is one more issue regarding Zions Bank's claim. Under § 1111(a) and Fed. R. Bankr. P. 3003(b), the schedules constitute a claim, but a filed proof of claim supersedes Debtor's schedules. *See* Fed. R. Bankr. P. 3003(c)(4). The January 18, 2011 proof of claim filed by Zions Bank asserts a total claim of $2,024,420.20, exceeding the asserted value of the collateral. Since the amended disclosure statement was filed prior to the claim of Zions Bank, it is not surprising that it does not discuss how Zions Bank's claim, which now consists of an unsecured and secured component, will be treated. Debtor's next amended disclosure statement will need to address

(continued...)

MEMORANDUM OF DECISION - 20

Additionally, the amended disclosure statement creates some confusion with its statement that "Kowallis Mackey" and "Littlewood Partners" will "forego" payments while payments to "these creditors" (evidently Rudy Weisshaupt, Steed Construction and Brenda Martin) are made.  Doc. No. 27 at 12.  Not only is there ambiguity as to which "Kowallis & Mackey" entity is being referenced, but it is not clear if this is intended to be a classification of unsecured creditors (*e.g.*, insider creditors) or a reference to equity interests that must by § 1129(b)(2)(B) and (C) not receive anything under the plan until unsecured creditors are paid. Debtor must remember that Kowallis & Mackey (whichever entity it is that is a creditor) and Littlewood Partners (shown as a creditor on a $197,000 loan on schedule F, Doc. No. 1 at 16, and also as an equity owner on the SOFA, *id*. at 25) are entitled to know the specifics of the treatment of their creditor claims.

Finally, Debtor will need to briefly address potential issues surrounding its proposal to pay interest to unsecured creditors, including questions of an appropriate interest rate and how disputes surrounding the same may affect confirmation or feasability of the plan.

---

[22] (...continued)
these issues.  In addition, as the claim bar date has now passed, Debtor's schedules establish the claim amount for all scheduled creditors other than (a) Zions Bank, and (b) Rudy Weisshaupt, whose filed proof of claim in the amount of $418,000 is $18,000 more than what Debtor scheduled.

MEMORANDUM OF DECISION - 21

### 4. Management

Debtor must address issues surrounding Debtor's post-confirmation management.  There are multiple connections and relationships among Debtor, numerous other Kowallis & Mackey entities, and individuals John Mackey and Douglas Kowallis.  The same should be disclosed.  Additionally, further disclosure is required as to Messrs. Mackey and Kowallis given their involvement in controlling Debtor and its operations.  *See*, *e.g.*, § 1129(a)(5)(A), (B) (requiring disclosures of "identity and affiliations" of any individual who will serve as a director or officer of Debtor post-confirmation, and of any "insider" that will be employed including the nature of any compensation).

The Court will require an amended disclosure statement to be filed within twenty-one (21) days of the date of this Decision and accompanying order. Debtor shall cause such an amended disclosure statement to be set for hearing in accord with Fed. R. Bankr. P. 2002(b).

### CONCLUSION

Upon the foregoing, the Stay Motion will be denied.  The objections to the amended disclosure statement will be sustained in part, as noted above, and otherwise denied.[23]  A further amended disclosure statement will be filed in accord

---

[23]  The Court here refers solely to Zions Bank's objections; the U.S. Trustee filed no
(continued...)

MEMORANDUM OF DECISION - 22

with the Court's instructions and set for hearing on notice.  An order will be

entered by the Court.

DATED:  April 14, 2011

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[23] (...continued)
objections, and made only limited input at hearing.  Both parties are free to file supplemental
objections to the further amended disclosure statement.

MEMORANDUM OF DECISION - 23